# IN RE APPLICATION OF MASUMOTO MICHIMOSHU, AND 46 OTHERS, FOR A WRIT OF HABEAS CORPUS.

### BEFORE CHIEF JUSTICE JUDD.

SUBMITTED NOVEMBER 17, 1895.    DECIDED NOVEMBER 18, 1895.

#### OPINION OF THE COURT, DELIVERED ORALLY.

This case presents a great many novel points, and it is hardly expected that my decision, which is rendered with very little study, should be as complete, thorough and logical as if I had had more time to put it into shape.

I wish first to speak with regard to the Act in question, being Act 66 of March 1, 1894, respecting the landing of aliens in this country. It was the evident intention of the legislature, following the example of the United States, to create a special tribunal for the examination of qualifications of persons coming from foreign countries to entitle them to land here. In Section 2, the tribunal for this port of Honolulu is either the Collector-General of Customs or his deputy. I prefer to say his deputy, for the reason that the Collector-General is made the court of appeal of last resort, and his deputy should act as the original court in order to have such appeal available. In the other ports of these islands, the "court" is the collector of customs for those points. The expression "the inspecting officers" is used. That seems to me to mean, for this port, the deputy collector and no other person, and a power is vested in him that cannot be delegated.

No court can delegate its functions except by statute. A

court may by statute refer accounts to referees or masters; but in this case the examination should have been made by the deputy collector. It so happened that in this case both the Collector-General and his deputy were away at the time the steamer with these immigrants arrived, but the immigrants are not to be held responsible for that. I say this because, in my opinion, these men cannot be deported as upon a decision or judgment of the deputy collector under the statute.

I wish to commend the Attorney-General for his frankness in stating to the court that he did not rely on the proceedings of the customs authorities under the statute which in other instances, if regular, might be done.

The power of the court to review the decision of the collector is not invoked in this case, for the reason that I have been called upon to act as an original court upon the facts in the case, and the government relies on the statute limiting the right of aliens to land as "the process of law" to deny the petitioners the right to land because they have not "visible means of support."

The statute does not say in the first section that the possession of fifty dollars is exclusive, that is, that the alien must have that amount of money. A man cannot be admitted if a pauper or a person with no visible means of support. But a man might have a cargo of valuable goods with him and yet not have over fifty cents cash in his pocket. The statute must have a sensible interpretation. A man might have a thousand dollars in foreign currency and yet not be provided with coin current in this country. I think that the statute is extremely liberal in that the possession of fifty dollars is to be taken as evidence of his not being a pauper, because fifty dollars, as we know, is not sufficient to support a man for any considerable length of time.

In regard to the constitutionality of the Act. I do not undertake to expound the law on that question exhaustively after such a limited consideration of the subject. Even though there exists a treaty between us and Japan which allows free locomotion of the respective subjects of those countries and the right of ingress and egress, yet the government has a right to exercise its police

power and enact wholesome regulations in order to protect its own citizens. Certainly if a man is afflicted with a loathsome disease or one dangerous to the community, the police power of the state has a perfect right to make and enforce such laws as would prevent their landing here. My impression is that the law is not unconstitutional or in violation of the treaty, and similar laws under similar circumstances are generally upheld.

As regards the facts in this case. It has been shown, and it is conceded, that the petitioner had in his possession certain certificates of deposit of a Japanese bank, or a Japanese government bank, which I understand is something like a National Bank in the United States, calling for 105 Japanese *Yen*. These certificates are readily convertible into the legal tender of this country by a local Japanese bank; and I distinguish this case from the one before Judge Cooper, where a check to the amount of fifty dollars was in question. In that case the ability of the drawer of the check to pay cannot be taken for granted. A check or order is a very different thing from a certificate of deposit payable to bearer. The legislature evidently intended that the possession of what was *legal tender in this country* should not be the only interpretation of what was "fifty dollars in money." Suppose we should have come here some Armenian immigrants. They might have possession of Turkish coins worth no more than their bullion value, but not legal tender of this country. It would be unjust to exclude them on that ground if the value of their coin was $50. United States greenbacks are not legal tender in this country although readily accepted as current here. The statute must have a sensible interpretation. From the testimony of the clerk of that bank, these *yen* certificates are readily convertible into coin. I hold that the possession of them to the value of $50 is a compliance with the requirement of the statute.

The effect of the investigation of the petitioner was of no more value in law than to procure from him an admission against his interest, his interest being to say that the money was his own. That admission is contradicted by his positive evidence intro-

duced in this court yesterday. He said that the money was his own, and was not to be returned to this company, and that he never made any contrary statement. If he had made any admission under oath before the tribunal created by the statute, I should have regarded it very differently; but the admission was made without caution by the court or without the particularity in examination usually required in such cases.

The admission was made to Mr. Doyle, a Japanese interpreter, who had no official position in this matter. He was sent there to hunt up evidence, but the court did not meet until Mr. McStocker, the deputy collector, met the immigrants after the examination was over.

The evidence of Mr. Furuya:—I have nothing to say against the gentleman's character, it seems to me, amounted to very little. In the first place he could not identify the man as the one who made the statement, and secondly he did make or see the entries of his statement made by Mr. Doyle. Both of these gentlemen rely on that record, and the record is not here—merely a type written copy. It does not meet the essential requirements of the statute; it was not made by the collector's court. I do not care to go into the question of the credibility of the testimony of these gentlemen as against the oath of the petitioner but I wish to say that from what occurred here yesterday it is very clear that these Japanese immigrants are dull of understanding, for they do not understand the particular questions put to them in every case. The interpreter here in court yesterday is a gentleman of high standing, and he had to repeat his questions over and over, and had to converse with the petitioner quite long before he could venture to interpret, showing that the Japanese is a language that requires particular skill in order to get one's exact meaning. I do not say that the Japanese language is any different in this respect from other foreign tongues, but we must concede to the petitioner some of the infirmities in the way of getting at his exact meaning.

I do not think I ought to hold the petitioner as having violated

the provisions of this statute by coming into this country without the possession of fifty dollars of his own, by reason of a somewhat unguarded admission to a party who had no official or judicial capacity in the premises.

As regards the access of parties to these immigrants to coach them as to what their testimony should be in order to obtain entrance into this country, I have little to say. The testimony would seem to exclude any such possibility of such access. Both sides in this case concede that there was no opportunity for any person to visit them and tell them to say that the money was their own, and not to be returned to the company. The testimony of the manager of the company was not altogether satisfactory as to his ignorance of the immigrants possessing the requisite amount of money, but he seems to have relied on the official inspection of these immigrants had in Japan as to their having the necessary qualifications.

I hope this case will, however, throw more light on the propriety of having stricter examinations made hereafter as regards these matters.

I agree with Mr. Thurston that the appearance of the petitioner, his health and strength and dress, and the fact of his wife coming with him and his paying her passage, are matters standing in his favor. This may not apply, however, to the rest of these immigrants. This petitioner has certainly shown strong proof, uncontradicted, that he left Japan with two hundred and sixty yen, how he obtained it, what he spent of it, and what remains. I cannot consider him barred by the statute.

I therefore order the petitioner discharged.

The Attorney-General, making no objections to similar orders in the cases of the other petitioners, the same orders may be entered in each case.

*A. S. Humphreys* and *Thurston & Stanley* for petitioners.
*Attorney-General Smith, contra.*